UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:14-CV-5-H

KELLER COTITA                                                              PLAINTIFF

v.

VERIZON WIRELESS                                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Verizon Wireless's motion to dismiss Plaintiff Keller Cotita's employment-related suit on the grounds that Cotita is judicially estopped from asserting claims that he did not disclose during a prior bankruptcy proceeding. The Sixth Circuit has a clear standard for applying judicial estoppel, but the circumstances here present a close call. After careful consideration, the Court concludes that judicial estoppel applies and Plaintiff's claims should be dismissed.

I.

The facts are straightforward. In March 2009 Cotita filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Louisiana. He submitted a plan and began making payments thereunder in April 2009. The plan obligated Cotita to pay $75/month over the course of 60 months (ending April 2014), or pay a 100% dividend to all general unsecured creditors who filed claims, whichever occurred earlier. The plan was confirmed in July 2009. It is unclear when Cotita completed payments, but he completed them in less than 60 months, at least by January 3, 2014,[1] and the final decree for his discharge was entered on April 7, 2014.

---

[1] Bankruptcy Dkt. No. 50.

Meanwhile, Cotita moved to Kentucky. In November 2010, he became employed with Verizon in Clarksville, Indiana. Then, in October 2012, he reported perceived commissions fraud by certain co-workers to Verizon's ethics board. After a "shocking" end-of-year performance review in February 2013, Cotita called Verizon's hotline to report perceived retaliation for reporting the fraud. He was fired three weeks later. Afterwards, a Verizon employee allegedly made a slanderous comment about why Cotita was no longer with Verizon.[2]

Cotita detailed these events in a letter to Verizon's counsel in September 2013. He demanded a settlement including, among other things, one year's salary, continuation of certain benefits, and reimbursement of legal fees. Rebuffed, Cotita filed suit on December 5, 2013 in Jefferson Circuit Court in Louisville, Kentucky, alleging promissory estoppel, defamation, and sex discrimination.

On November 15, 2013, Cotita, through counsel, filed an "In Compliance Motion for 1328(a) Discharge" in his bankruptcy case. On December 16, 2013—eleven days after Cotita filed suit against Verizon—the bankruptcy court granted a discharge in an order titled "Discharge of Debtor After Completion of Chapter 13 Plan." On January 6, 2014, Eugene Hastings, Cotita's Chapter 13 trustee, filed a "Notice of Plan Completion" and the case was closed. The case was reopened on February 6, 2014 to enter an order approving Trustee's "Notice of Intention to Pay Claim(s) and Disallow Claim(s)," which Hastings had filed in October 2013.

Verizon removed the case to federal court and filed this pending motion to dismiss. Verizon claims that because Cotita never amended his bankruptcy schedules to include his

---

[2] The Verizon employee allegedly stated, "When you make shady, under-the-table deals with customers you shouldn't be dealing with in the first place, Verizon will fire you." DN 1-1; 13-3.

claims and the contingent assets associated with them before receiving a discharge, he is judicially estopped from asserting the claims and damages at issue in this action.

II.

Whether to apply judicial estoppel is a mixed question of fact and law for the Court to consider. As the Supreme Court has observed, "the circumstances under which judicial estoppel may be appropriately invoked are probably not reducible to any general formulation of principle." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citation omitted).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Here, Verizon's motion merely references publicly available documents on the bankruptcy docket. In contrast, Cotita has supplemented his response with an affidavit from Eugene Hastings, the Chapter 13 trustee in his bankruptcy case, and a settlement proposal his attorney sent to Verizon's counsel in September 2013.

The Court may consider materials outside the pleadings on a motion to dismiss where the losing party was on notice that he was required to present all evidentiary materials pertinent to the issue. *See Sumner v. Armstrong Coal Co., Inc.*, 533 F. App'x 583, 588-89 (6th Cir. 2013); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998). Notice is required where the proceedings are likely to surprise one party. *Salehpour*, 159 F.3d at 393. A party cannot claim surprise "when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion." *Song v. City of Elyria*, 985 F.3d 840, 842 (6th Cir. 1993). Here, Cotita was not surprised. He presented the Court with evidence extraneous to the

3

pleadings as part of his response to Verizon's motion to dismiss. So the Court will consider matters outside the pleadings in deciding the motion.

III.

Judicial estoppel bars a party from asserting a position contrary to one the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Eubanks v. CBSK Fin. Group*, 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). It is an equitable doctrine; the "evil to be avoided" through its invocation has been described as "'the perversion of the judicial machinery,' 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' and 'having one's cake and eating it too.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (internal citations omitted).

No "inflexible prerequisites" exist for judicial estoppel. *New Hampshire*, 532 U.S. at 749. The Sixth Circuit, however, has applied the doctrine to bar employment related claims not disclosed in prior bankruptcy proceedings where (1) plaintiff's later position was clearly inconsistent with the one he asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) plaintiff asserted the inconsistent position to gain an unfair advantage, or the omission did not result from mistake or inadvertence. *Id.* at 750-51; *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010). The Court will discuss each factor in turn.

A.

Cotita denied under oath having any contingent or unliquidated claims of any kind in various bankruptcy filings between October 2013 and January 2014. These filings included reaffirming the absence of any claims in his "In Compliance Motion for 1328(a) Discharge for

Chapter 13 Case Filed On or After October 17, 2005," which he filed through counsel on November 15, 2013. The bankruptcy court granted the discharge and closed the case without the schedules ever having been amended and without knowing what Cotita knew: that he contemplated a claim based upon events in March 2013 and his decision to try to extract damages from Verizon by September 2013. By failing to amend his schedules to reflect his potential assets Cotita failed a continuing duty to the bankruptcy court.[3] As a consequence, he denied any claim in his bankruptcy proceedings, while simultaneously asserting one against Verizon. These seem to be contrary and inconsistent positions.

1.

To avoid this result, Cotita urges a novel interpretation of two apparently conflicting Bankruptcy Code provisions—§§ 1306 and 1327.[4] Section 1306 provides that "Property of the [bankruptcy] estate includes, in addition to the property specified in section 541 of this title . . . all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(1). Section 1327

---

[3] Like the court in *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013) (unpublished), both parties in this case operate on the shared assumption that Cotita was obliged to disclose his employment claim to the bankruptcy court. Cotita's response to Verizon's motion to dismiss urges an interpretation of certain Bankruptcy Code provisions not yet adopted in this Circuit. Cotita says such an interpretation would excuse his failure to report his employment claims against Verizon in his bankruptcy proceeding. Yet Cotita also acknowledges that he did, in fact, have a duty to report: "Mr. Hastings [the Trustee] has been informed of Mr. Cotita's suit against Verizon, *as is required* under Chapter 13." DN 13, p. 1 (emphasis added). Cotita further acknowledges, "A Chapter 13 bankrupt has a responsibility to continue to inform the trustee about his or her assets and income during the pendency of the bankruptcy." *Id.* at p. 2. The problem is that Cotita never explains *when* he informed the trustee. It appears it was only after Verizon filed its motion to dismiss on judicial estoppel grounds.

[4] The Seventh and Eleventh Circuits have adopted the so-called "estate transformation" test. This approach reads a compromise into the conflicting provisions and regards the property of the estate for Chapter 13 purposes as only that property which is necessary to the execution of the plan. Cotita argues that all he needed to do to accomplish his plan was "to come up with $75 a month . . . . This Court, by virtue of looking at the plan itself, can see that this is the amount of payment necessary for Mr. Cotita to receive a discharge and for his case to be closed." DN 13, p. 9. But the Sixth Circuit has explicitly *not* adopted an approach for reconciling § 1306 with § 1327.

states, however, "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b).

The Sixth Circuit acknowledged this conflict but declined to address this "difficult bankruptcy issue[]" in a recent unpublished case. *See Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013) (unpublished). The panel reaffirmed that Chapter 13 debtors do have continuing duties to report assets or contingent assets in the very same case:

> Applying judicial estoppel under these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests. *See* [*White*, 617 F.3d] at 479 & n. 5; *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002); *In re Coastal Plains, Inc.*, 179 F.3d [197,] 207-08; *see also* 11 U.S.C. §§ 521(a)(1), 541 (a)(7).

Cotita's own response acknowledges that he understood his continuing duty.[5] That duty makes logical sense. Any contrary position reads 11 U.S.C. § 1329 out of the Bankruptcy Code.[6] The Sixth Circuit has declined to adopt another conception.

Even though a claim subsequent to filing the original petition may not affect a trustee's ultimate decision to modify a confirmed plan, the debtor still has a continuing duty to report.[7]

---

[5] "Mr. Hastings [the trustee] has been informed of Mr. Cotita's suit against Verizon, as is required under Chapter 13." DN 13, p. 1. Further, "A Chapter 13 bankrupt has a responsibility to continue to inform the trustee about his or her assets and income during the pendency of the bankruptcy." *Id.* at p. 2.

[6] This section allows holders of unsecured claims to request a modification of a plan after confirmation. Reasons for seeking a modification include "to increase or reduce the amount of payments on claims of a particular class provided for by the plan" and "[to] extend or reduce the time for such payments." 11 U.S.C. 1329(a)(1)-(2) (West 2014).

[7] Section 1329 of the Bankruptcy Code is why the following statement in Cotita's response brief is incomplete: "Disclosure in the Chapter 13 context, to the extent disclosure is required by the Chapter 13 plan, is so that the trustee can continue to assess the debtor's financial situation is order to determine if a modification is appropriate." Trustees are not the only relevant decision makers in the context of a pending bankruptcy. Without full and complete information regarding a debtor's personal assets, creditors are unable to exercise their ability to request a post-confirmation modification to a plan. The limited likelihood that Cotita's income would have changed during the pendency of the action does not necessarily come into play in the initial decision to seek modification or not. Of course, while parties in interest may have an absolute right, between the time that the Chapter 13 plan is confirmed and the time that the debtor completes payment thereunder, to request that the plan be modified, it does not necessarily follow that the parties have an automatic right to have such a request granted. *See In re Trumbas*, 245 B.R. 764 (Bankr. D. Mass. 2000).

Cotita violated this duty: He did not reveal his claims against Verizon nor seek to amend his schedule of personal assets until after he had received a discharge in bankruptcy.

2.

Relatedly, Cotita says that he was under no duty to disclose this asset because it did not exist as estate property under the language of his individual Chapter 13 plan. He points to the section of his plan entitled "Additional Sums the Debtor Shall Remit to the Chapter 13 Trustee," found under "Submission of Earnings or Future Income." The choices available were "NONE" or "50% of the net recovery from all personal injury and litigious claims." The Trustee, with the approval of all creditors and the bankruptcy court, checked "NONE." This seems to the Court an incorrect statement. The answer "NONE" in Cotita's plan is unambiguous.

Cotita has included an affidavit from his trustee, Hastings, who attested (on an unknown date, but before the bankruptcy was closed for the second and final time on April 7, 2014) the following:

> 10. A modification in this case is wholly inappropriate. Modifications are only appropriate in situations where the debtor's income has changed. Mr. Cotita has received no monies from this case, and any recovery is prospective and contingent.
>
> 11. Given that this asset is of unknown value at this time, and its' [*sic*] realization is uncertain, modifying the plan would be an abuse of discretion.[8]

That the value of the claim was unknown and unlikely to cause a modification is quite beside the point. Cotita had a duty to report assets and potential assets and to take steps to amend incorrect schedules. He even acknowledges his duty as a "Chapter 13 debtor to keep the trustee informed about [his] fiscal matters . . . so that the trustee can continue to assess [his] fiscal situation in order to determine if a modification is appropriate."[9] Nothing in the plan altered this continuing

---

[8] DN 13-2, ¶ 10-11.
[9] DN 13, p. 6.

duty. Cotita's disclosure to the bankruptcy trustee (and only the trustee) after Verizon's motion to dismiss is too little, too late under the Sixth Circuit standard. His simultaneous assertions to Verizon are already inconsistent with his bankruptcy filings.

B.

As to the second factor in the judicial estoppel analysis, the bankruptcy court adopted the contrary position when it granted Cotita a discharge by final decree dated April 7, 2014. Cotita claims that his bankruptcy was "inadvertently closed" without any explanation. Yet he got what he requested: even if the case was initially closed "inadvertently," it was reopened and then closed a second time without his schedules being amended.[10] The Sixth Circuit has held that "when a bankruptcy court—which must protect the interest of all creditors—approves payments from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988).

Certainly, the bankruptcy court relied upon a contrary position in granting its final discharge. This is true even if its knowledge of the true facts would not have altered its final decision.

C.

The Sixth Circuit will not invoke judicial estoppel where the omission (that is, the prior inconsistent position) occurred because of mistake or inadvertence. *Browning*, 283 F.3d at 776. A debtor's position may be inadvertent "where a debtor lacks the knowledge of the factual basis of the undisclosed claim or where the debtor has no motive for concealment." *Eubanks*, 385

---

[10] No proof exists in the record that the schedules were amended before April 7, 2014, the second closing, despite Cotita's averment in his response that as of the date he filed his response, March 7, 2014, his "schedules [were] in the process of being amended by his former bankruptcy attorney." DN 13, p. 14 n.4.

8

F.3d at 898. Cotita knew of the factual basis of his cause of action against Verizon as early as March 20, 2013. He even included as an exhibit to his response his attempt to capitalize on those claims via a settlement letter dated September 7, 2013.[11] He argues that this attempt to reduce his undisclosed claims to damages show he lacked the intent to deceive. Perhaps, but the Sixth Circuit has stated that "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis v. Weyerhauser Co.*, 141 F. App'x 420, 426 (6th Cir. 2005) (unpublished).

The Court does not find that Cotita's omissions garnered him some unfair advantage. But the Court does find that Cotita's omission was not due to either a mistake or inadvertence. This is a close call, but his omission does meet the Sixth Circuit standard.

IV.

One might say that Cotita is being unfairly punished for a mistake of judgment. Addressing this concern, the Sixth Circuit permits district courts to consider whether litigants have demonstrated an absence of bad faith. *See Eubanks*, 385 F.3d at 894, 895; *see also Lewis*, 141 F. App'x at 426 (quoting *Eubanks* in the chapter 13 context). But Cotita cannot show that absence.

In *Eubanks*, for example, the Sixth Circuit chose not to apply judicial estoppel where the plaintiffs had made several affirmative attempts to disclose their potential civil claims against the defendant. *See Eubanks*, 385 F.3d at 897-99. Not only had the plaintiffs made both the bankruptcy court and trustee aware of potential civil claims before the bankruptcy action closed, they even took steps—like scheduling court conferences—to try to resolve issues as they arose. *Id*. at 898. They amended their schedules once, tried to amend them a second time, and otherwise kept the court, trustee, and their creditors apprised of developing situations "through correspondence, motions, and status conference requests, thus supporting the argument that the

---

[11] DN 13-3.

9

claim's omission on the schedules was merely inadvertent . . . ." *Id*. at 898-99. Cotita has fallen well short of the level of diligence demonstrated in *Eubanks*.

Cotita took no affirmative steps to disclose his claims except for apprising his bankruptcy trustee.[12] He failed to notify both the bankruptcy court and his creditors before receiving a discharge. He has claimed to have made the decision to file suit only after settlement talks with Verizon's counsel fell through, but he was engaged in those talks as early as September 2013. Regardless, he had known of these possible claims for many months. Yet he disclosed his employment claims only *after* Verizon moved to dismiss them. In other words, Cotita—who was terminated in March 2013 and filed suit in December 2013—sat on his possible claims for nine months without ever making a full disclosure. His actions do not indicate good faith. Far from the diligence demonstrated in *Eubanks*, Cotita's actions more closely resemble the "'minimal alleged effort[s]'" the Sixth Circuit has held ineffective to "establish that [his] omissions were inadvertent under *Eubanks*." *White*, 617 F.3d at 478 (quoting *Lewis*, 141 F. App'x at 427).

"Since the bankruptcy system depends on accurate and timely disclosures, the extent of [] efforts [to correct an omission], together with their effectiveness, is important." *White*, 617 F.3d at 480. Late efforts to correct omissions are given less weight in a motive/bad faith analysis. *Id.* True, these circumstances are distinguishable from certain cases where judicial estoppel was deemed appropriate. The Court is persuaded, however, that Cotita's actions are patently distinguishable from cases like *Eubanks*, where plaintiffs took "constant affirmative actions" to inform the bankruptcy trustee *and the bankruptcy court* of their claim. *See Eubanks*, 385 F.3d at

---

[12] Again, neither Cotita's trustee's affidavit nor Cotita's response lists when, exactly, he informed his trustee. Apparently, Cotita eventually told his "former bankruptcy attorney," DN 13, p. 14 n. 4, but nothing came of it.

899. Cotita's knowing failure to fully disclose his potential claim, in the Court's view, shows bad faith.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to dismiss (DN 7) is converted to a motion for summary judgment, summary judgment is hereby SUSTAINED; and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record